**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NICK SNYDER, et al.,

               *Plaintiffs*,

      v.

WASHINGTON NATIONALS
BASEBALL CLUB, LLC,

               *Defendant.*

Civil Action No. 1:24-cv-01182 (CJN)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**<u>THE CLASS ACTION SETTLEMENT AGREEMENT</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION…………………………………………………….......1

II.     BACKGROUND……………………………………………………......2

  A.  Procedural History……………………………………………….................2

  B.  The Settlement Agreement………………………………………………...5

      1.  The Settlement Class………………………………...……………………...5

      2.  Relief for the Class..…………………………………………..………….6

      3.  The Release…………………………………………………..………..7

      4.  Notice, Settlement Administration, and Payment to Class Members……..…...........8

      5.  Attorneys' Fees and Costs and Service Awards…………………………..…………9

III.    ARGUMENT…………………………………………………………10

  A.  Final Certification of the Class is Warranted………………………….......................10

  B.  The Court Should Grant Final Approval of the Settlement Agreement……..……………10

      1.  The Legal Standard for Final Approval of a Class Settlement…………..…...........10

      2.  The Settlement Should Be Granted Final Approval Because it is

          Fair, Reasonable, and Adequate and Satisfies the Rule 23(e) Factors……………11

          a.  The Settlement is Entitled to a Presumption of Fairness……………..…….12

          b.  Rule 23(e)(2)'s Procedural Factors Are Satisfied………………………..…..12

          c.  Rule 23(e)(2)'s Substantive Factors Are Satisfied………………………...14

          d.  The Support of Plaintiffs and Plaintiffs' Counsel, and the Reaction

              of the Settlement Class Support Final Approval…………………….……17

          e.  The Requested Service Awards Should Be Approved……………………19

          f.  Class Counsel's Request for Attorneys' Fees and Costs

              Should Be Approved Under Rule 23(h)………………………..……20

IV.     CONCLUSION…………………………………………………………21

# TABLE OF AUTHORITIES

**Cases**

*Banks v. Booth*, 2022 WL 1091212 (D.D.C. Apr. 12, 2022) ........................................................ 18

*Ceccone v. Equifax Info. Servs. LLC*, 2016 WL 5107202 (D.D.C. Aug. 29, 2016) ..................... 19

*Citizens for a Better Env't. v. Gorsuch*, 718 F. 2d 1117 (D.C. Cir. 1983) .................................. 11

*Cohen v. Warner Chilcott Pub. Ltd. Co*., 522 F. Supp. 2d 105 (D.D.C. 2007) ........................... 19

*Cullen v. Whitman Med. Corp*., 197 F.R.D. 136 (E.D. Pa. 2000) ................................................ 16

*Dew v. Mindfinders, Inc.*, 2021 WL 4797551 (D.D.C. Oct. 14, 2021)......................................... 14

*Howard v. Liquidity Servs*., 2018 WL 4853898 (D.D.C. Oct. 5, 2018) ........................................ 16

*Hoyte v. District of Columbia*, 325 F.R.D. 485 (D.D.C. 2017) .................................................... 13

*In re Domestic Airline Travel Antitrust Litig*., 378 F. Supp. 3d 10 (D.D.C. 2019) ...................... 10

*In re Ikon Off. Sols*., *Inc., Sec. Litig.,* 194 F.R.D. 166 (E.D. Pa. 2000) ........................................ 16

*In re Lorazepam & Clorazepate Antitrust Litig*., 2003 WL 22037741 (D.D.C. June 16, 2003).. 19

*Kinard v. E. Capitol Fam. Rental, L.P*., 331 F.R.D. 206 (D.D.C. 2019).......................... 10, 19, 20

*Little v. Washington Metro. Area Transit Auth*., 313 F. Supp. 3d 27 (D.D.C. 2018) ............. 18, 19

*McKnight v. Erico Int'l Corp*., 655 F. Supp. 3d 645 (N.D. Ohio 2023) ................................. 12, 14

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 565 F. Supp. 2d 49 (D.D.C. 2008)......... 12

*Sarceno v. Choi*, 78 F. Supp. 3d 446 (D.D.C. 2015) .................................................................... 14

*Shaffer v. George Washington Univ*., 2024 WL 3280061 (D.D.C. May 13, 2024)....................... 19

*Stephens v. Farmers Rest. Grp*., 329 F.R.D. 476 (D.D.C. 2019)................................................... 18

*Stewart v. Rubin*, 948 F. Supp. 1077 (D.D.C. 1996) ................................................................... 18

*Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179 (D.D.C. 2011)............................................... 19

*Twelve John Does v. District of Columbia*, 117 F.3d 571 (D.C. Cir. 1997)................................. 13

*United States v. MTU Am. Inc*., 105 F. Supp. 3d 60 (D.D.C. 2015)............................................. 11

*Wells v. Allstate Ins. Co*., 557 F. Supp. 2d 1 (D.D.C. 2008)........................................................ 19

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................................. 12, 13

Fed. R. Civ. P. 23(e) ............................................................................................................ passim

Fed. R. Civ. P. 23(g). ............................................................................................................ 12, 13

Rule 23 Advisory Committee Note......................................................................................... 11, 12, 15

**Treatises**

4 Newberg and Rubenstein on Class Actions § 13:49 (6th ed.) .................................................... 12

4 Newberg and Rubenstein on Class Actions § 13:50 (6th ed.) .................................................... 14

## I.    INTRODUCTION

This class action lawsuit against the Washington Nationals Baseball Club, LLC ("the Nationals" or "Defendant") has been settled and preliminary approved by this Court, and subsequently notice was sent to the Settlement Class. Accordingly, Plaintiffs Nick Snyder and David Coyne ("Plaintiffs") respectfully submit this Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Final Approval of the Settlement Agreement. As described herein, the proposed settlement is fair and reasonable and warrants this Court's final approval.

This class action alleged that the Nationals violated the D.C. Human Rights Act's ("DCHRA") prohibition on age discrimination in places of public accommodations by denying persons 40 and older the opportunity to receive a ticket discount of up to 30% and a $5 to $15 per-ticket spending credit that the team offered to 21- to 39-year-old fans for certain ticket purchases through the team's "Millennial Ticket Discount" in 2023 and "Young Professionals Ticket Discount" in 2024 (collectively, "the Discount"). *See* ECF No. 1-1 at p. 15 ("Compl."). It also alleged that the Nationals offering the Discount violated the D.C. Consumer Protection Procedures Act ("CPPA"). The Nationals offered the Discount from March 29, 2023, through March 28, 2024, and ended it immediately after the Complaint was filed in this action on March 28, 2024 in the Superior Court of the District of Columbia. Decl. of Peter Romer-Friedman ("Romer-Friedman Decl.") ¶¶ 29, 32.

In May 2024, the Parties agreed to attempt to settle the dispute through mediation. *See* ECF No. 12. After a period of informal discovery and arm's length negotiations, the Parties' settlement efforts were ultimately successful, and on May 9, 2025, the Parties jointly filed the Settlement Agreement with the Court. ECF No. 25-1 ("Settlement").

The Court granted the Plaintiffs' motion for preliminary approval of the Settlement on May 21, 2025, finding that the settlement was fair, reasonable and adequate, and ultimately setting the final approval hearing for September 10, 2025. *See* Order, ECF No. 27; Minute Order, ECF No. 28. Notice has been effectuated to tens of thousands of Settlement Class Members, providing them with information about the Settlement, the amounts they can each expect to receive if the Court grants approval, an opportunity to file a claim form to receive a cash payment rather than ticket credit, and, in the case of potential Settlement Class Members, an opportunity to identify themselves as members of the Settlement Class. Decl. of Caroline P. Barazesh ("Admin. Decl.") ¶¶ 6-20. At the conclusion of the notice period, not a single Settlement Class Member has objected to the Settlement or requested to be excluded from the Settlement. *Id.* ¶¶ 21-22.

Plaintiffs respectfully submit that this motion should be granted because the proposed Settlement Agreement satisfies all the criteria for final approval under Rule 23(e) of the Federal Rules of Civil Procedure. Defendant does not oppose this Motion.

## II.    BACKGROUND

### A.    Procedural History

On March 28, 2024, after significant factual development and legal research, Plaintiffs filed a putative class action against the Nationals in the Superior Court of the District of Columbia, Case No. 2024-CAB-001961. *See* ECF No. 1; ECF No. 1-1 at p. 15. On April 23, 2024, the Nationals removed the action to the United States District Court for the District of Columbia, No. 1:24-cv-01182 (CJN). *See* ECF No. 1.

On May 21, 2024, the Parties agreed to pursue mediation to attempt to resolve the matter amicably. *See* ECF No. 12. Accordingly, the Parties jointly requested, and this Court granted, the Parties' request to stay the action so that the Parties could seek to resolve the dispute by engaging in informal discovery and taking part in a mediation with an experienced mediator. *Id.*

2

To further facilitate settlement discussions, the Parties entered into a Protective Order, *see* ECF Nos. 13-14, and the Nationals generated and produced documents and information that were necessary for the Parties to assess liability and potential damages on a class-wide basis. Romer-Friedman Decl. ¶¶ 35-37. In particular, the Nationals produced a spreadsheet that contained information on hundreds of thousands of single-game tickets that the Nationals sold between March 29, 2023 and March 28, 2024 ("the Class Period"), the period in which the Nationals had offered the Discount, and the Nationals produced other information about the various discounts that the Nationals had offered during the Class Period. *Id.* ¶ 36. This information collectively enabled the Parties and their respective damages analysts to estimate the actual economic damages that the Settlement Class Members may have experienced because they did not receive the Discount during the Class Period. *Id.*

The Parties estimated potential "Actual Damages" for each "Covered Ticket Purchase"—*i.e.*, each ticket purchased during the Class Period to which the Discount could have applied—by calculating the difference between (1) the price the ticket purchaser paid in connection with such Covered Ticket Purchase less any spending credit received in connection with such Covered Ticket Purchase and (2) the price that the ticket purchaser would have paid in connection with such Covered Ticket Purchase had such ticket purchaser received the Discount less any spending credit they would have received in connection with such Covered Ticket Purchase had they received the Discount. *Id.* ¶ 38. For example, if a fan paid $70 for a Covered Ticket Purchase and received no spending credit, but a fan purchasing the same ticket with the Discount would have paid $50 and received a $5 spending credit, then the Actual Damages for that Covered Ticket Purchase would be $25 (*i.e.*, [$70 - $0] - [$50 - $5] = $25). *Id.* ¶ 39.

Based on the information produced by the Nationals, Plaintiffs estimated that the total Actual Damages of all Settlement Class Members was $1,286,683. *Id.* ¶ 40. To estimate this figure, Plaintiffs first identified the Actual Damages for all the Covered Ticket Purchases for which the Nationals had age information for the ticket purchaser (either based on the purchaser's self-reported age or approximated age data provided by a third-party vendor) that indicated the purchaser was 40 or older at the time of purchase. That amount was $864,819. *Id.* Then, Plaintiffs identified the Actual Damages for all Covered Ticket Purchases for which the Nationals did *not* have age information for the ticket purchaser, and then multiplied that figure by 63.84%, based on Plaintiffs' estimate that 63.84% of those purchasers were age 40 or older (since for Covered Ticket Purchases, the Nationals' data indicated that 63.84% of the purchasers were age 40 or older). That resulting figure was $421,864. *Id.* The sum of those two figures was $1,286,683. *Id.*

On November 20, 2024, the Parties participated in a joint mediation before Linda Singer of JAMS in Washington, D.C. *Id.* ¶ 42. Ms. Singer is a pioneer in the field of Alternative Dispute Resolution, who has more than 40 years of dispute resolution experience and is nationally known for mediating class action lawsuits. JAMS, Linda Singer, https://www.jamsadr.com/singer/.

Over the course of several months prior to the mediation, the Parties met a number of times to discuss the data and information the Nationals had produced and to develop a common methodology for estimating the potential Actual Damages. Romer-Friedman Decl. ¶ 43. In addition, the Parties met collectively and separately with Ms. Singer to discuss the Parties' positions and the Parties exchanged mediation statements that analyzed liability, potential defenses, and estimated damages. *Id.* While the Parties did not reach settlement on November 20, 2024, the Parties continued settlement negotiations. *Id.* ¶ 45. On December 20, 2024, the Parties reached an agreement on the terms of relief to the Settlement Class, ECF No. 17, and on February

5, 2025, the Parties reached a negotiated agreement on the attorneys' fees and costs and Class Representatives' service awards to be proposed to the Court. Romer-Friedman Decl. ¶ 45; ECF No. 21. On May 16, 2025, the Parties executed and filed the Settlement Agreement with this Court. ECF No. 25-1 ("Settlement"); Romer-Friedman Decl. ¶ 47.

On May 21, 2025, the Court granted Plaintiffs' Motion for Preliminary Approval of the Settlement Agreement and preliminarily certified the Settlement Class and approved notice to the Settlement Class. ECF No. 27. Thereafter the Parties jointly filed a Motion to Modify the Final Approval Hearing date. ECF No. 28. On May 30, 2025, the Court granted the Motion and scheduled the Final Approval Hearing for September 10, 2025. ECF No. 28. The Parties then filed a Joint Motion to Establish an Objection/Exclusion Deadlines and Re-Set Certain Other Deadlines. ECF No. 29. On June 9, 2025, the Court granted the Parties' Motion. ECF No. 30 (Minute Order).

Pursuant to the Court's Order, the Settlement Administrator proceeded to provide notice to the Settlement Class Members. Admin. Decl. ¶¶ 6-20. To date, no Settlement Class Member has requested exclusion or has objected to the settlement. *Id.* ¶¶ 21-22.

**B.     The Settlement Agreement**

**1.     The Settlement Class**

The "Settlement Class" is defined as:

[A]ll persons who made at least one Covered Ticket Purchase, *i.e.,* a single-game ticket to a Nationals home baseball game that was scheduled to occur during the 2023 or 2024 Major League Baseball regular season; where the purchase was made directly from the Nationals on the Nationals or MLB.com websites, by phone, or at the Nationals' box office between March 29, 2023 and March 28, 2024; where the purchaser was 40 years of age or older at the time of ticket purchase; where the purchase was for an Eligible Seat;[1] where the purchaser suffered Actual Damages due to not having access to the "Millennial" or Young Professional"

---

[1] "Eligible Seat" means a seat eligible for the Millennial or Young Professional Discount, *i.e.*, a seat located in the following sections of the Nationals' Stadium: Baseline Box, Baseline Reserved, Infield Box, Corner, Scoreboard Pavilion, and Upper Gallery. Settlement § 1(N).

discount with respect to their purchase; and where the purchaser would have been eligible for the "Millennial" or Young Professional" discount with respect to their purchase but for their age.

Settlement §§ 1(L), (HH).[2] To put it another way, the Settlement Class includes every person whom Plaintiffs estimate suffered Actual Damages with respect to a Covered Ticket Purchase. The Parties estimate there are no more than 32,000 Settlement Class Members. *Id.* § 1(HH).

### 2. Relief for the Class

Under the Settlement Agreement, every Settlement Class Member has a choice to receive either a cash payment or a credit to their MLB.com account that can be used toward the purchase of one or more tickets to a future Nationals home game ("Ticket Credit"), based on the amount of their Actual Damages. *See* Settlement § 2(A). If all Settlement Class Members receive Ticket Credit, the default form of consideration, the dollar value of all Ticket Credit provided to Settlement Class Members will be $3 million, which is roughly 2.33 times the estimated Actual Damages of the Settlement Class Members.

If all Settlement Class Members opt to receive a cash payment instead of Ticket Credit, the dollar value of all cash payments made to Settlement Class Members will be $800,000, which is 62.2% of the estimated Actual Damages of the Settlement Class Members. *Id.* §§ 1(C), 2(A). The foregoing alternative amounts are collectively referred to herein as the "Settlement Fund." The Ticket Credit amount provided to Settlement Class Members who do not opt to receive consideration in the form of a cash payment is the *greater* of (A) $18.00 or (B) two times the

---

[2] Excluded from the Settlement Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) the Nationals, the Nationals' subsidiaries, parent companies, successors, predecessors, and any entity in which the Nationals or the Nationals' parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the Settlement Class; and (4) the legal representatives, successors or assigns of any excluded persons. Settlement § I(HH).

Actual Damages for each Covered Ticket Purchase. *Id*. Each Settlement Class Member who opts to receive consideration in the form of a cash payment will receive a cash payment that is 62.2% of their Actual Damages. *Id.* For example, if a Settlement Class Member bought a single ticket that is a Covered Ticket Purchase and had $20 of Actual Damages, they could choose to receive $12.44 in a cash or a Ticket Credit of $40. If a Settlement Class Member does not elect to receive cash, the Member will automatically receive Ticket Credit in their MLB.com account. *Id.* § 2(E)(a).

Under the Settlement, Settlement Class Members may also receive a second cash payment or Ticket Credit based on the leftover Settlement Fund, depending on how many Potential Class Members (as defined in the Settlement Agreement) file claim forms establishing that they were 40 or older at the time of their purchase such that they are Settlement Class Members. *Id.* § 2(F). Because of this second round of payments, none of the Settlement Fund will revert to the Nationals.

Furthermore, because the Nationals have agreed to separately pay attorneys' fees and costs and Class Representatives' service awards, the consideration that the Settlement Class receives will not be reduced as a result of the agreed upon attorneys' fees and costs or service awards, *see id.* § 8(A), and each Settlement Class Member will have the opportunity to receive consideration in the form of Ticket Credit that is at least 200% of their Actual Damages. *Id.* § 2(A).

### 3.    The Release

The Settlement Agreement contains a specific narrow release that only releases the claims of the named Plaintiffs and Settlement Class Members that were brought or could have been brought in the Action relating to the Nationals and other Released Parties, or that in any way relate to or arise out of the Discount or the other allegations in the Action, from the date of entry of judgment in this action. Settlement § 3. The release is not a general release and does not release

claims that the Settlement Class Members may have against the Nationals or other entities that are unrelated to the subject matter of this Action or the Discount. *See id.*

### 4. Notice, Settlement Administration, and Payments to Class Members

Following the Court's preliminary approval order, Settlement Class Members were sent the court-approved notice by email (or via U.S. Postal Service mail if their e-mail was not available or bounced back), and through a website. *See generally Id.* §§ 4-5; Admin Decl. ¶¶ 15-20. The Nationals provided the Settlement Administrator a class list in electronic format that included the names and last known email address and U.S. mailing addresses that belong to each Known and Potential Class Member ("Class List"). *Id.* § 4(A)(i); Admin Decl. ¶¶ 6-9. The Settlement Administrator took efforts to identify current addresses via public and proprietary systems. Admin Decl. ¶ 12.

The Settlement Administrator emailed and mailed the Court-approved Notice to 11,057 Potential Class Members, and 14,716 Known Settlement Class Members, respectively. *Id.* ¶ 17. Notices were returned to the Settlement Administrator and 89 were remailed. *Id.* ¶ 19. The Settlement Administrator estimates that approximately 78.24% of the Settlement Class Members were provided notice by either direct mail or email. *Id.* ¶ 20. Moreover, the Notice was also posted on the website created by the Settlement Administrator, as well at the Nationals' website, mlb.com/nationals. Settlement § 4(A)(iv) and 4(B); Admin Decl. ¶ 13.

Settlement Class Members had forty-five (45) calendar days from the time the Notice was initially mailed to object to or opt-out of the Settlement. ECF No. 28 (Minute Order); Admin Decl. ¶¶ 15, 21. At the conclusion of the Notice Deadline, no Settlement Class Members had requested exclusion and no Settlement Class Members had objected to the Settlement. Admin Decl. ¶¶ 21-22.

In response to the Notice, 445 Known Class Members filed claim forms, and among them

315 chose a cash payment and 130 chose Ticket Credit. *Id.* ¶¶ 25.  In addition, 111 Potential Class

Members who were 40 at the time they purchased their tickets filed claim forms, and among them

76 chose a cash payment and 35 chose Ticket Credit. *Id.* ¶ 26. An additional 103 Potential Class

Members who were under 40 at the time they purchased tickets filed claim forms, but they are not

Class Members because of their age. *Id.* ¶ 28.

Should the Court grant final approval to the Settlement, Potential Class Members will have

a second opportunity to file a claim form that shows they were 40 years old or older at the time

they purchased Nationals tickets that are covered by the Settlement. Settlement § 2(E)(b). During

this time period, an advertisement will be placed regarding the settlement. *Id.* Any balance of the

Settlement Fund that is not claimed by Potential Class Members will be redistributed among all

Known Class Members by dividing the remainder of the Settlement Fund, such that each Known

Class Member receives a percentage of the remaining Settlement Fund balance in proportion to

the Actual Damages suffered by such Known Class Member in relation to the total amount of

Actual Damages of all Known Class Members. *Id.* § 2(F)(a)-(d). The Settlement Fund balance will

be distributed to each Known Class Member in the form of Consideration that such Known Class

Member elected in Phase One (*i.e.*, Ticket Credit or cash payment). *Id.* § 2(F)(b).

If no additional Settlement Class Members file valid claim forms, the average Settlement

Class Member who opts for Ticket Credit will receive $205.99, and the average Settlement Class

Member who opts to receive Cash will receive $44.48. Admin Decl. ¶ 33.

### 5.    Attorneys' Fees and Costs and Service Awards

The Settlement Agreement provides that the Nationals, separate from and in addition to the

Settlement Fund and subject to this Court's approval, will pay $640,000 for fees, costs, and

expenses to Class Counsel, and will pay a total of $10,000 for service awards to be provided to the

two Class Representatives. Settlement § 8(A), (C)-(D). Plaintiffs, through a separate motion, will request that the Court grant the Plaintiffs' request for $640,000 in attorneys' fees and costs.

### III.    ARGUMENT

Plaintiffs respectfully request that the Court enter the accompanying order granting final approval of the Settlement under Rule 23(e) of the Federal Rules of Civil Procedure.

### A.    Final Certification of the Class is Warranted

As the Court has already preliminarily certified the class for settlement purposes under Rule 23(a), (b)(3), and (c)(1), the Court need only find that the same factors have been met to certify the Settlement Class as part of final approval under Rule 23(e). At preliminary approval, the Court considered the applicable factors for class certification and found that the proposed Settlement Class satisfied them all. ECF no. 27 at 1-2. No new developments warrant a modification of the Court's certification of the Settlement Class. Moreover, tens of thousands of Class Members were given notice of the Settlement and the opportunity to object to or opt out of the Settlement. The fact that many submitted claim forms, and yet none of them has objected or opted out, weighs heavily in favor of certifying the Settlement Class for the purposes of granting final approval under Rule 23(e).

### B.    The Court Should Grant Final Approval of the Settlement Agreement

### 1.    The Legal Standard for Final Approval of a Class Settlement

Plaintiffs seek final approval of the Settlement pursuant to Fed. R. Civ. P. 23(e)(2). There is a "long-standing judicial attitude favoring class action settlements." *Kinard v. E. Capitol Fam. Rental, L.P.*, 331 F.R.D. 206, 213 (D.D.C. 2019) (citations omitted). "Class action settlements are favored as a matter of public policy in the District of Columbia Circuit." *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 16 (D.D.C. 2019) (citing *United States v. MTU Am.*

*Inc.*, 105 F. Supp. 3d 60, 63 (D.D.C. 2015) ("Settlement is highly favored, as '[n]ot only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation.'") (quoting *Citizens for a Better Env't. v. Gorsuch*, 718 F. 2d 1117, 1126 (D.C. Cir. 1983)).

In determining whether a settlement agreement is fair, reasonable, and adequate under Rule 23(e)(2), such that the court should grant final approval, the Court must consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;
(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The first two paragraphs of Rule 23(e)(2) describe the "procedural" dimension of the fairness analysis, which looks "to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23 Advisory Committee Note. The final two paragraphs of Rule 23(e)(2) describe the "substantive" dimension of the fairness analysis, which focuses on the "relief the settlement is expected to provide." *Id*.

**2. The Settlement Should Be Granted Final Approval Because it is Fair, Reasonable, and Adequate and Satisfies the Rule 23(e) Factors.**

**a. The Settlement is Entitled to a Presumption of Fairness.**

The settlement is entitled to a presumption of fairness, because (1) the settlement negotiations occurred at arm's length under the guidance of a qualified mediator on multiple days of mediation, Romer-Friedman Decl. ¶¶ 33, 42-43, (2) there was sufficient discovery, including the exchange of substantial documents and data, to allow the Parties to assess the policies at issue and the Defendant's potential liability under the DCHRA and the CPPA, and to calculate the potential damages of the Settlement Class, *id.* ¶¶ 35-41; (3) the proponents of the Settlement are experienced in similar class action and civil rights litigation, and Class Counsel have decades of civil and workers' rights class and collective litigation experience, *id.* ¶¶ 4-29; Decl. of Ryan A. Hancock ("Hancock Decl.") ¶¶ 11-12; and (4) no Class Member has objected to the terms of the Settlement Agreement or asked to opt out of the Settlement. Admin. Decl. ¶¶ 21-22; *see Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 565 F. Supp. 2d 49, 55 (D.D.C. 2008) (internal citations omitted) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

**b. Rule 23(e)(2)'s Procedural Factors Are Satisfied.**

In considering Rule 23(e)(2)'s procedural factors—whether "(A) the class representatives and class counsel have adequately represented the class," and whether "(B) the proposal was negotiated at arm's length," Fed. R. Civ. P. 23(e)(2)(A)-(B)—the Court focuses "on the actual performance of counsel acting on behalf of the class." Rule 23 Advisory Committee Note. The Court considers whether a neutral party was involved, and the process used to arrive at an award of attorneys' fees. *Id.*

12

Rule 23(e)(2)(A)'s adequacy requirement "is 'redundant of the requirements of Rule 23(a)(4) and Rule 23(g).'" *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 662 (N.D. Ohio 2023) (quoting 4 Newberg and Rubenstein on Class Actions § 13:49 (6th ed.)). And Rule 23(a)(4)'s requirement of adequate representation "imposes two criteria on plaintiffs seeking to represent the class: '(1) the named representative must not have antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *Hoyte v. District of Columbia*, 325 F.R.D. 485, 490 (D.D.C. 2017) (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)). In addition, Rule 23(g) addresses the standards for adequacy of class counsel, including the work that counsel has done in identifying or investigating potential claims, counsel's experience and knowledge, and the resources counsel are willing to commit to representing the class.

Here, it is plain that the Class Representatives and Class Counsel have adequately represented the Settlement Class. Class Counsel have demonstrated leadership in effectively and efficiently prosecuting this action by filing a complaint that led to the cessation of the alleged practices and obtaining a Settlement that provides all Settlement Class Members the opportunity to receive at least 200% of their economic damages in Ticket Credit or 62.2% of their economic damages in cash. This is excellent relief—especially in light of the fact that absent this settlement, the Settlement Class Members may have had to file individual arbitration demands to pursue relatively small amounts of uncertain relief. This resolution will benefit tens of thousands of Settlement Class Members in total. Admin. Decl. ¶¶ 29-33. In the absence of this action and the work the Class Representatives and Class Counsel did to secure this excellent Settlement, tens of thousands of Class Members would have likely received no relief for the alleged conduct at issue.

Furthermore, Class Counsel includes law firms who have litigated numerous class and/or collective actions involving civil rights and employment matters throughout the United States, including in this District. *See* Romer-Friedman Decl. ¶¶ 5-28; Hancock Decl. ¶¶ 11-12. By appointing the Class Representatives and Class Counsel at the preliminary approval stage, the Court necessarily concluded that the Class Representatives were adequate and that Class Counsel had the experience and qualifications necessary to represent the Class. ECF No. 27. The advocacy of Class Counsel is described in greater detail in Plaintiffs' motion for attorneys' fees and costs and the declaration of Peter Romer-Friedman and Ryan Hancock.

The Settlement was also plainly negotiated at arm's length. The Rule 23(e)(2) factor requiring that settlements be negotiated at arm's length "aims to root out . . . 'collusive settlements.'" *McKnight*, 655 F. Supp. 3d at 662 (quoting 4 *Newberg and Rubenstein on Class Actions* § 13:50 (6th ed.)). Here, the Court can easily conclude this was an arm's length settlement with no evidence of collusion. *See* Romer-Friedman Decl. ¶¶ 33-47.

The Settlement Agreement represents a hard-fought compromise reached by experienced counsel on both sides through arm's length, adversarial negotiations. *Id*. ¶¶ 5-28, 33-46, 63; Hancock Decl. ¶¶ 12, 21. This case involved the production and analysis of voluminous data from the Nationals concerning tens of thousands of potential class members from a variety of data sources. Romer-Friedman Decl. ¶¶ 36-37. The process was overseen and assisted by a well-respected mediator who worked with the Parties and their counsel over a day-long mediation and numerous meet-and-confers before and after the date of mediation to reach a resolution. *Id.* ¶¶ 33, 42-43. The participation of "an experienced and respected mediator . . . 'further bolsters the arm's length nature of the negotiations.'" *Dew v. Mindfinders, Inc.*, 2021 WL 4797551, at *5 (D.D.C. Oct. 14, 2021) (quoting *Sarceno v. Choi*, 78 F. Supp. 3d 446, 451 (D.D.C. 2015)).

14

Accordingly, Sections (A) and (B) of Rule 23(e)(2) have been satisfied.

### c.    Rule 23(e)(2)'s Substantive Factors Are Satisfied.

In considering Rule 23(e)(2)'s substantive factors—that "(C) the relief provided for the class is adequate," and "(D) the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(C)-(D)—the Court focuses on the "relief the settlement is expected to provide." Rule 23 Advisory Committee Note. To evaluate the proposed method of relief distribution under Paragraph (C)(ii), the Court balances the need for the deterrence of unjustified claims against the risk of a claims process that is "unduly demanding." *Id.* To evaluate the proposed attorneys' fee award under Paragraph (C)(iii), the Court considers "the relief actually delivered to the class" and the relevant factors under Rule 23(h). *Id.*[3] Finally, Paragraph (D) requires the Court to consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims." Rule 23 Advisory Committee Note.

Here, the relief provided to the Settlement Class by the Settlement satisfies the criterion to be considered under Paragraph (C). The non-reversionary Settlement represents an excellent recovery for the Settlement Class, especially when considering "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i); *see* Romer-Friedman Decl. ¶¶ 54-59. Each Settlement Class Member will receive either a cash payment that represents at least 62.2% of their Actual Damages or a Ticket Credit that is at least 200% of their Actual Damages, with a minimum Ticket Credit of $18 per ticket. Settlement § 2(A). And with the second phase distribution, Settlement Class Members may receive an additional amount of consideration. *Id.* § 2(F).

Settlement Class Members will receive this substantial cash payment or Ticket Credit without the further delay and uncertainty that would have resulted if the Court had compelled

---

[3] Rule 23(e)(2)(C)(iv) requires the Court to account for any side agreements that are made in connection with the proposed settlement. But here there are no such side agreements.

individual arbitrations, or if the case had been taken to trial and any subsequent appeal. The Parties vigorously disagreed on numerous legal and factual issues that would have impacted the case moving forward, including whether the practices challenged in the action violate the DCHRA and CPPA, and whether the Class Members' claims are subject to individual arbitration. Romer-Friedman Decl. ¶¶ 54-59. If the Nationals had prevailed in compelling the Class Members to arbitrate their claims individually, the vast majority of Class Members would have received no monetary relief, because, among other reasons, most of them would not have filed individual arbitration actions against the Nationals. *Id.* ¶ 57. The Parties also hotly disputed damages, with the Nationals claiming that only a small portion of the Class Members would have chosen to use the Millennial or Young Professional Discount and that many of the Class Members were eligible for other discounts. *Id.* ¶ 56.

When taking into account the costs, risks, and delay of trial and appeal, the relief provided is not just adequate, it is an excellent or exceptional result for the Settlement Class Members. Indeed, it is rare for class action settlements to deliver relief that *exceeds* the actual damages of the class members, as this Settlement provides. In fact, federal district courts across the country regularly approve class action settlements that provide relief that represents only a small percentage of the class members' damages. *See e.g.*, *Howard v. Liquidity Servs.*, 2018 WL 4853898, at *5 (D.D.C. Oct. 5, 2018) (approving settlement providing 4% of maximum realistic recoverable damages, and collecting cases for proposition that the typical recovery is in the range of 3-14%); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144 (E.D. Pa. 2000) (finding settlement "represent[ing] approximately [17%] of single damages to the class [was] an amount significantly higher than the proportion of damages obtained in settlement agreements approved by other courts."); *In re Ikon Off. Sols., Inc., Sec. Litig.,* 194 F.R.D. 166, 183 (E.D. Pa. 2000)

(approving monetary settlement of 5.2% to 8.7% of best possible recovery for class members).

Moreover, the adequacy of the relief provided to the Settlement Class is further bolstered by the fact that the Settlement Fund will not be reduced by any amount that will be paid to Class Counsel as attorneys' fees or reimbursement of costs or service awards and none of the Settlement Fund will revert to the Nationals. *See* Settlement §§ 8(A) & 2(F).

Finally, the Settlement treats the Settlement Class Members "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). As described above, all Settlement Class Members are treated equally: each Settlement Class Member can choose to receive a cash payment or Ticket Credit, and all Settlement Class Members are guaranteed to receive at least $18 per ticket in ticket credit so that every Class Member can attend a Nationals' game because of the Settlement. The Settlement Agreement also automatically distributes cash payments or Ticket Credit to all Settlement Class Members for whom the Parties have age data, and Settlement Class Members for whom the Parties do not have age data will automatically receive Settlement cash payments or Ticket Credit by submitting a simple claim form that identifies their date of birth. Settlement § 1(F) & Ex. B. Class Members who chose to receive a cash payment will receive a check from the Settlement Administrator, and Class Members who opt to receive Ticket Credit will receive the Ticket Credit in their MLB.com accounts, without having to take any further action. Settlement § 2(E).

Accordingly, Sections (C) and (D) of Rule 23(e)(2) have been satisfied.

### d. The Support of Plaintiffs and Plaintiffs' Counsel, and the Reaction of the Settlement Class Support Final Approval.

The adequacy of the Settlement is further demonstrated by the strong support from the Class, the Class Representatives, and Class Counsel.

Here, the Notice was directed by email and/or mail to each of the Settlement Class Members and the Notice was posted on two separate websites. Settlement §§ 4(A)(iv) & 4(B); Admin. Decl. ¶ 13. The Notice explicitly advised Settlement Class Members of their rights under the Settlement, including the payments that they are each entitled to receive under the Settlement and the amount of attorneys' fees and costs and service awards sought by the Plaintiffs. Settlement, Exs. C & D. Following that notice period, hundreds of class members submitted claim forms seeking their preferred form of relief. Admin. Decl. ¶¶ 24-26.

Through the end of the notice period there were *zero* objections to the Settlement and *zero* requests for exclusion. *Id*. ¶ 21-22. This uniformly positive reaction strongly supports final approval. When there are no objections or a "very small number of objections," it "illustrates that the settlement is fair to the class." *Banks v. Booth*, 2022 WL 1091212, at *2 (D.D.C. Apr. 12, 2022) (cleaned up). This is particularly true where tens of thousands of class members have received notice and none have objected or opted out.

The Settlement is also supported by both named Plaintiffs and Class Representatives, as well as by Plaintiffs' Counsel. Romer-Friedman Decl. ¶¶ 58-59; Declaration of Nick Snyder ("Snyder Decl.") ¶¶ 7-8; Declaration of Dave Coyne ("Coyne Decl.") ¶¶ 7-8. And it is well established that "[t]he opinion of experienced class counsel is 'afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement.'" *Jones v. Chopra*, 2023 WL 6037295, at *8 (D.D.C. Sept. 15, 2023)  (quoting *Stephens v. Farmers Rest. Grp*., 329 F.R.D. 476, 488 (D.D.C. 2019)); *accord In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d  100, 106 (D.D.C. 2004); *Stewart v. Rubin*, 948 F. Supp. 1077, 1087 (D.D.C. 1996).

### e.    The Requested Service Awards Should Be Approved

The proposed service awards of $5,000 to each of the Class Representatives are reasonable, consistent with amounts that courts award in similar cases, and should be approved by this Court.

"'[C]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Little v. Washington Metro. Area Transit Auth.*, 313 F. Supp. 3d 27, 35 (D.D.C. 2018) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *10 (D.D.C. June 16, 2003)).

Here, all the factors that courts consider support granting the requested service awards, as the Class Representatives took substantial actions to protect the interests of the Settlement Class and tens of thousands of Settlement Class Members will benefit from the actions they took by receiving cash or Ticket Credit. Notably, each of the Class Representatives played an active role throughout the litigation, including investigating the claims, reviewing and approving court filings, participating in settlement discussions, including the mediation, and reviewing and approving the Settlement. Romer-Friedman Decl. ¶¶ 60-62; Snyder Decl. ¶¶ 6-9; Coyne Decl. ¶¶ 6-9. And participating in a high-profile lawsuit against a major sports franchise risked—and resulted in—media attention and public scrutiny for the named Plaintiffs. Snyder Decl. ¶ 5; Coyne Decl. ¶ 5.

Furthermore, the amount of the $5,000 proposed service awards is consistent with or lower than amounts that courts in this Circuit have routinely approved. As Judge Leon recently explained, "an award of $10,000 is in line with other awards that have been provided by courts in this Circuit." *Shaffer v. George Washington Univ.*, 2024 WL 3280061, at *2 (D.D.C. May 13, 2024) (approving service awards in a consumer class action); *see also Little*, 313 F. Supp. 3d at 39 (approving service awards of $7,500 to each of eight class representatives in Title VII class action);

*Kinard v. E. Capitol Fam. Rental, L.P.,* 331 F.R.D. 206, 217 (D.D.C. 2019) (approving service awards of $5,000 for each of four named plaintiffs in civil rights class action).[4]

The proposed service awards are further supported by the fact that "neither Defendant[] nor any class member has objected" to the service awards, which were disclosed in the notice that was sent to tens of thousands of Class Members. *Kinard*, 331 F.R.D. at 217. And the Nationals have agreed to pay the Class Representatives' service awards separate from and in addition to the payments that will be made to the Settlement Class Members, so the consideration that the Class receives will not be reduced by these service awards. *See* Settlement § 8(A) and (D).

Accordingly, the Court should approve the requested service awards.

### f.    Class Counsel's Request for Attorneys' Fees and Costs Should Be Approved Under Rule 23(h).

As detailed in Plaintiffs' Motion for an Award of Attorneys' Fees and Costs, filed concurrently with this motion, Plaintiffs seek, and Defendant has agreed to pay, a reasonable award of $640,000 in attorneys' fees and costs, which will be paid separate from and in addition to the payments to the Settlement Class Members. This amount is particularly reasonable, given the substantial work that Class Counsel spent advancing the interests of the class and the excellent result that they obtained for the Settlement Class Members.

---

[4] *See also Ceccone v. Equifax Info. Servs. LLC*, 2016 WL 5107202, at *13-14 (D.D.C. Aug. 29, 2016); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 197 (D.D.C. 2011) (awarding $5,000 each to three class representatives as "fall[ing] within the range of reasonableness"); *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 9 (D.D.C. 2008) (granting $10,000 service award to representative plaintiffs); and *Cohen v. Warner Chilcott Pub. Ltd. Co.*, 522 F. Supp. 2d 105, 124 (D.D.C. 2007) (awarding $7,500 to each of two named plaintiffs who "fully complied with all demands placed on them during litigation and assisted in [p]laintiffs' [c]ounsel's investigation of this case").

**IV.    CONCLUSION**

For the reasons described above, the Court should grant Plaintiffs' motion for final approval of the settlement.

                                        Respectfully submitted,

September 3, 2025,    /s/ Peter Romer Friedman
                                        Peter Romer-Friedman (D.C. Bar No. 993376)
                                        PETER ROMER-FRIEDMAN LAW PLLC
                                        1629 K Street NW, Suite 300
                                        Washington, DC 20006
                                        (202) 355-6364
                                        peter@prf-law.com

                                        David Berman (DDC Bar No. NY0624)
                                        PETER ROMER-FRIEDMAN LAW PLLC
                                        16 Court St. Fl. 33
                                        Brooklyn, NY 11241
                                        berman@prf-law.com

                                        Ryan Allen Hancock (DDC Bar No. PA0139)
                                        WILLIG WILLIAMS DAVIDSON
                                        1845 Walnut Street, 24th Floor
                                        Philadelphia, PA 19103
                                        (215) 656-3600
                                        rhancock@wwdlaw.com

                                        *Counsel for Plaintiffs and the Class*